Mr. Cook, we'll be glad to hear from you. Thank you, Your Honor. My name is John Cook. I represent the appellant, Theresa Nixon, who is a plaintiff below, and we're asking the court to reverse the findings of the granting of summary judgment and a motion to dismiss. Hold on just a second. I'll add some time back. Thank you, Your Honor. A brief summary of the material facts. This is a sexual harassment case. The parties were in a sexual relationship starting in 2013. In 2015, Mr. Kysela, the defendant, hired Ms. Nixon to join his company. They had an on and off relationship, and she resigned in January of 2019. The sexual relationship continued on and off after that. In July of 2019, he rehired Ms. Nixon. She said she wanted it to be business only. He said that sex and work were, quote, all one thing, unquote. That's at page 700 of the joint appendix. The parties ended up back in a sexual relationship, and then in September, Mr. Kysela testified that the sexual relationship ended in early September. That's at page 722. Ms. Nixon testified that she decided to end the relationship. In the middle of September, when Mr. Kysela was in Europe, what's undisputed is that on September 23rd, as Mr. Kysela was planning to return from Europe, he sent an email to Ms. Nixon asking if they could meet on Sunday night upon his return to discuss, quote, business. So, counsel, can I do it? This is just factual. I'm trying to figure out what I can about the record here. I was a little bit confused about this, and maybe you can clear it up, or maybe it's not something that is clear from the record. I read the testimony from Mr. Kysela about the relationship, the sexual relationship that ended in early September, and I read it that Ms. Nixon said mid-September. And somewhere in there, there was discussion that after, I think, Ms. Nixon said in that September range that she didn't want to have a continuing sexual relationship, they got together again. Is that right? Is that wrong? That's not correct. That's not a disputed point. There's no dispute that Mr. Kysela returned to Europe in September. I'm talking about before he went to Europe. Oh, beforehand. Yes. We don't know the date. Right. Right. There's an on-and-off relationship. It's unclear when the last sexual relationship. Is it clear that he testified, as it may have been in the deposition, I'm not sure, that the relationship had ended as of early September? That was his testimony in his deposition. So, where the district court says that it's undisputed that Nixon did not tell Kysela it was over until after he mailed her on September 23rd, that that's factually incorrect? Yes. That's one of the points where I think the district court erred, in that this is a disputed fact. And what the district court says in its opinion is… Well, it seems like the district court, as far as the quid pro quo claim, based its decision on this knowledge factor for Kysela, and if its factual finding was clearly erroneous because of Kysela's contrary testimony, wouldn't we inform the district court of that and ask it to reconsider this particular claim with the factual predicate correct? Certainly one option for this court is to note exactly what you noted, which is what we've contended, is that the court below made an impermissible factual finding by disregarding Mr. Kysela's testimony and finding instead that the relationship ended either on September 29th or on the 25th. One quick question about that factually. I'm trying to find it in the record where I believe your client says that it ended on September 29th. Right. At one point she says, actually the complaint says, that she ended the relationship on the 29th. And she did on the 29th in the phone call say, you know, we're not together anymore. But if you look at the email exchange, which is pages 1103 to 1105, which is from September 23rd to September 25th, she says, it's over, I don't want a personal relationship anymore. So, you know, but of course, this had happened 20 times before, back and forth. It's part of the factual background here that there's a little bit of a lack of clarity of exactly what the facts were. And of course, that's why summary judgment is not appropriate. Let the jury sort of sift through. So your grounding, at least on the quid pro quo claim, is that there's a material dispute of fact as to when the relationship ended and therefore summary judgment could not have been granted without resolution of that fact. That's correct. Go ahead and answer, I'm sorry. If you follow the arguments of the appellee and you say that there needs to be a sexual advance that's rejected in order to trigger the protection, which I disagree with, but if you follow that, then certainly the resolution of when the relationship ended, because the district court says that tells you whether the advance is welcome or not, would be extremely relevant. And so, yes, if you're going to follow the legal reasoning of the district court, you have to have undisputed facts and the facts were not correctly found to be undisputed on when the relationship ended. Can I follow up on that point, counsel? I understand what you're saying, but I guess if you have a multi-year track record of saying it's over and then it continuing, does the determination of when it's over, how do you make that? Is it just in Ms. Nixon's head that, yeah, I really meant it this time, despite the fact that she had said that many, many times and apparently not meant it? I'm just trying to figure out, when we have a, lots of times it's kind of clear, there's an unwanted advance, it's not appreciated or welcome from the get-go. Here, we don't seem to have that. And we seem to now be looking, okay, here in September of 19, perhaps it ended, even though if you map it up factually, it'd be the exact same as what had happened 20 plus times before. Right, and that's the conundrum you get into with the legal analysis that the district court took, which we believe is wrong. But there shouldn't be a requirement that there be a sexual advance and then a rejection of that in order for quid pro quo to apply. We suggest that the court act consistently with the First Circuit and force the breaker. And what the First Circuit said in that case, which was a hostile environment case, but it defined this because of sex language, and it directly addresses this proposal by the appellees that say that it all depends on when somebody makes an advance. And at page 229, the First Circuit says, reasoning that the harassment could not have been motivated by the victim's sex because it was instead motivated by a romantic relationship gone sour establishes a false dichotomy. Presumably, the prior relationship would never have occurred. Larry, is it your view they're establishing that as a matter of law whenever you have one of these cases, or is it a factual question on the basis of sex? I think the appellee is arguing it's a matter of law. I would suggest two things. One is, you've got a factual issue. I assume they're arguing it's a matter of law. It can't be. I assume you argue that it is. The other question is, well, can you really determine that until you are able to determine the facts? And again, that depends on where the legal line is drawn. I suggest to the court that there is no practical difference between someone who declines a sexual advance when they're not in a relationship and someone who ends the sexual relationship. In the first case, the person's saying, I don't want to have sex with you. And in the second case, the person's saying, I don't want to have sex with you again. Well, the word again doesn't change the underlying issue, which really is, can you fire someone for saying they don't want to have sex with you? And the rule should be no. That's what the First Circuit gets at. And I understand you're, I think you would argue that Bostock does support perhaps that type of approach. But isn't that at the causation step of a quid pro quo claim? Is that right? Yes. I mean, causation is a huge issue here because if you look at, I think, all the cases relied upon by the appellee, there are these cases where here's the end of the sexual relationship. And then over time, sometimes months later, in one case a year later, stuff happens. Boyfriend, new boyfriend, jealousy, other things, people saying things. And then the employment relationship ends here. And in those cases, the court is here saying, look, these intervening factors caused the end of the employment relationship. But in our case, there's no daylight. The sexual relationship ends and then boom, even the district court said that the ending of the sexual relationship was probably the reason why the employment relationship ended. So what I was getting at on that, under a quid pro quo claim, you start with that first element is a protective group. The second one is, I think, unwelcome sexual harassment. And the third, that the harassment is based on sex. And the fourth is it affected compensation or employment. And I get where at causation, that's a hard question, and maybe your argument is it's all related to sex and qualifies. But isn't one of the earlier elements an unwelcome advancement? And if it's consensual, I mean, there's cases that say those, if it's consensual, you don't have an unwelcome advancement? Those cases, I believe, are in the context of defining the term because it's sex. Remember, when you go back to the statute, the statute says you cannot make an employment decision quote, because of sex. That's the statute. That's it. And you get from that, the next thing that happens is you have the CFR and you have the Supreme Court saying things like, well, if you have an unwanted sexual advance and then you decline it and you're fired, that's because of sex. Well, it can also be because of sex if you break off what was a consensual relationship. That's what the First Circuit says is the false dichotomy. You don't have to have this sort of, almost like the first bite rule in the dog bite case where the first time you get the, the guy gets to be rejected and then he has to come back a second time before there's liability. Well, let's assume there was never a time that the defendant made an unwanted sexual advance. Every sexual advance had come, every time there had been one, they were in a consensual relationship. And the employee decides, I don't want to do this anymore, breaks it off, and he fires her. At that point, you say there's liability even if there had never been an unwanted sexual advance. Right, because when the woman breaks off the relationship, she's saying, I don't want to have sex again. That's the same thing as somebody not in a relationship having an unwanted sexual advance and saying, I don't want to have sex. It's the same thing. Does that read out, and that may be a logical argument, may be a good argument, but does that read out current, the elements of a quid pro quo case as it currently exists in our circuit? Sure, because all of this is, again, within, I think it's prong three, the one that says the actions have to be, quote, because of sex. This is all about defining that terminology because of sex. I mean, we've got an adverse employment action. We have protected class. The question is, is the termination because of sex? What happens if it's either an undisputed fact or the jury determines this relationship ended because she was driving him crazy, he was driving her crazy, that's why it ended? Is that still on the basis of sex? If she ends the relationship saying, we're not going to have sex anymore and he says, then you're fired, then yes. That's not this scenario. They're not talking about sex. They're just saying, you're driving me nuts. If the facts were, I'd say they're not here, but if the facts were that there was some non-sexual reason why, then you could on those facts perhaps have that argument. We don't have that here. Here it's clear that it's about the history of it both within this parameter of what's happening in the week that he's coming back. He wants to come back and have sex that Sunday night. That's what those emails are about. And she says, no. When she says, I'm not available Sunday night, she's saying, I don't want to have sex with you. She's not saying, you know, I got angry at your mother-in-law or, gee, I don't like your car or something non-gender related. She's saying, I don't want to have sex. Let me just ask so I'm clear from looking at the record because I'm not. So on September 25th, he emails her from, he's in Europe somewhere, right? 23rd. And that's when they have this conversation and I think somewhere in the conversation is when she says it's over and done. Right. I'm over my time. So initially, because I think the facts are that two days before, it's okay. Two days before he leaves for Europe, they have sexual relations, right? And he goes to Europe and then he sends this email to her and I think that's what the district court judge is saying. He's thinking that they're still in a relationship. Somewhere in that email, she says towards, I guess, the end of the conversation it's over and done. However, I do like a good conversation. We'll keep it to business. Try to be nice. And so then after that in the conversation, are you saying that when he says you're the problem child, behave and we'll be fine, is that the sexual advance? So the first is he says, let's get together Sunday night. She says, no, I'm not available. And then he says, well, why not? I can't do Monday. Why are you unavailable? Tell me the truth. He's pushing. He's making, in essence, a second advance. He's pushing again. But she doesn't tell him it's over until after. In response to that one. In response to the second one. So in the beginning, how does he know that it's over? It's not legally relevant whether he knows it's over because you can be in a relationship and still have an unwelcome sexual advance. Appellee says you can't. That's like back to the rule where the law used to say a man can't rape his wife and thankfully we're past that legal standard. But the question is, is it unwelcome? When she said, I'm not available Sunday night, she's saying this is unwelcome. And he's saying, oh, come on. Let's have sex. He knows it's unwelcome. She just told him it's unwelcome. And he asked again. And she rejected that. And when she rejected that, she was fired. That tracks the legal theory of the appellee. Thank you very much. You've got some rebuttal time. Ms. Conkright. Good morning. May it please the court, Sarah Conkright on behalf of the appellees, Frances Casella and Casella Perry, Feast Limited. This is a case about a six year on and off consensual romantic relationship that had its ups and downs, but it was nonetheless characterized by mutual affection and love throughout. It began more than a year prior to Ms. Nixon's employment at the company. It continued throughout her employment. It continued after she voluntarily resigned and it continued when she returned to the company voluntarily in August of 2019. So contrary to what my colleague has argued here, this is not a case simply about sex. It's about a relationship that ran the course of many years. And for the reasons I'll share today and as we stated in our brief, we ask that this court affirm the decision of the lower court granting summary judgment on both the quid pro quo and contract claim as well as on the dismissal of the hostile work environment claim. The opposing counsel didn't get into the hostile work environment claim. But that's kind of slim in the complaint. Give us 30 seconds on your view of it. On hostile work environment? Yes, ma'am. So to maintain a claim for hostile work environment, there has to be facts that demonstrate a work environment that's permeated with discriminatory ridicule and intimidation. This conduct has to be severe and pervasive. And what we have in this case are scan allegations primarily focused on the tumultuous personal nature of the couple's personal relationship as opposed to the conditions in the workplace. So this went out on the motion to dismiss. That's correct. So I take it your position is the complaint's just too thin. It is, Your Honor. And Ms. Nixon includes four allegations of incidents over the course of five years. These incidents involve criticism for work, being criticized for texting in a meeting, not having a sales folder made for her, and receiving an explicit text message from someone else, not from Mr. Casale. And she argues that this is sufficiently severe and pervasive. And the cases in this jurisdiction are very clear that such conduct does not rise to the level of severe and pervasive harassment. She's not identified any unwelcome conduct by Mr. Casale during the course of her employment. Her allegations are simply alleged concerns about whether she had a job, not the working conditions. And for that reason, the lower court properly dismissed the hostile environment claim at the 12B6 stage. On the quid pro quo claim, we have this issue of trying to make sense of what happened in September of 2019 on its own and in relation to the previous events of the relationship. And I know you want to talk about that and I want to hear. But before getting into that, what about the argument that even a termination because of being upset, hurt feelings, etc., after the end of a consensual relationship, even if that was the basis of the termination, that's inherently about sex, like the First Circuit says and arguably like post-doc says. So the question, as I understand it, is if a couple ends a relationship for incompatibility, hurt feelings that flow from it, and there's a termination, the problem with that construct is there has to be an unwelcome advance. That is a threshold element to maintain a quid pro quo sexual harassment claim. Meritor Savings Bank v. Vincent tells us that the gravamen of a sexual harassment claim is unwelcome conduct. So instead of starting the analysis at the end, you have to look at that initial question, is there unwelcome conduct? And in the context of a consensual sexual relationship, there needs to be an indicia that one person no longer wishes to remain in that relationship. And from that point on, any such conduct would be unwelcome. If your client had all his advancements had been in the context of a consensual relationship such that they weren't unwelcome, but then Ms. Nixon says, hey, I want this to end, and he never makes another unwanted advancement, but he fires her. You think there's no liability there? There is no liability. That's exactly what happened in this case. It's undisputed. Ms. Nixon testified they were in a consensual relationship, it ended, and she was let go. How is that not on the basis of sex? For the reasons that you just pointed out, hurt feelings, bruised ego, there's nothing to suggest that a that would lead a court to conclude that it was a rejection of a sexual overture, a rejection of an unwelcome advancement. Well, but she says this email fit a pattern of subtle sexual advances between the two of them, though some of the previous advances weren't particularly subtle. And that that was unwelcome because we'd ended the relationship. I think that's a very important point. First of all, the timeline of events leading to the end of the relationship and the termination are critical here. Ms. Nixon's undisputed testimony is that they were in a relationship until he left for Europe on or about September 21st. Yeah, but he testified that that's not correct. Mr. Casella indicated that he thought the relationship had ended earlier. I think it's important to note, the court asked some questions about this earlier, evidence of unwelcomeness is demonstrated by the plaintiff's response to the overture. In this case, Ms. Nixon believed they were in a relationship. She testified we had sexual relations twice the week before he left. The record shows that they were engaged sending text messages saying, I love you. Those facts indicate that she believed them to be in a welcome, consensual relationship. So I think that's where it falls apart. Whether or not Mr. Casella thought that they had broken up earlier, he wasn't sure of the date, ultimately it's the plaintiff's perspective that dictates the unwelcomeness. The district court here said it's undisputed. Nixon did not tell Casella it was over until after he emailed her on the 23rd. If that's factually disputed, isn't that a key problem with the district court's decision? Because the district court bases its conclusions on that fact. It goes on to say that if it wasn't over by that time, it's a fair reading of the email that the sexual relationship was going to continue. It seems like the district court made a factual error here because there is contrasting testimony, opposing testimony on when the relationship ended. We don't believe that there was any factual error made. As a matter of law, the courts are clear. Casella says that the relationship ended in early September before I went to Europe and the district court says no, it only happened in the early September. I think the critical point is whether or not Mr. Casella believed the relationship had ended previously, it is the employee, the plaintiff's perspective that determines the unwelcomeness. So even if he thought it had ended at a prior time, she's believing they're still on. There's nothing from her perspective that would indicate that another advance would be unwelcome. I take your point, but we disagree that that is dispositive of the summary judgment issue here in this case. Counsel, I want to go back to the discussion we were having. I was pressing your colleague a little bit on the unwanted sexual advancement. I agree that's what our circuit has said and other circuits have said about a quid pro quo claim. Does Bostock change that? Bostock is talking about causation in Title VII. It adopts a but-for causation standard. It says if one of the factors related to the adverse action is sex, then that's a but-for cause. It measures that by saying change one thing and you get a different outcome. If you change Ms. Nixon's sex to male, don't you get a different outcome? Well, I think the key point is that that's a causation question and we're not at that stage. We're still at the stage of is there unwelcome conduct? There's not unwelcome conduct in this case. After the relationship concluded, there were no further advances. That is clear in Ms. Nixon's testimony and in the record in this case. So the question about but-for cause, we're not even at that stage, absent any unwanted advance. But even so, this is a case where the timing of events suggests that this was nothing more than personal animosity or feelings. No one said that. Ms. Nixon doesn't say that. Your client doesn't say that. I would direct the court to Ms. Nixon during her deposition addressed an email that she sent to Mr. Casella after her termination saying you were mad at me personally, therefore your choice to hurt me. And when asked at her deposition why he was mad at her personally, she said I felt it was because of our whole mess of a relationship. And that was my assumption. The whole mess of their relationship. Not because she had rejected a sexual advance. So I believe that that goes to the point that this was borne out of a incompatibility, breakdown of a relationship, whatever you want to call it. But this was not a decision that was made based on sex because of her gender. If this case were here after a bench trial or a jury break and it reached these findings, I would say you're hung free. We're here on summary judgment and it seems like there are some material facts in dispute on what all these emails meant. Well, if you want to look at the emails themselves, I think those alone are devoid of any sexual overture. Mr. Casella, who believes and understands that they're in a consensual relationship. Well, looking at the emails themselves, can we meet to discuss business? I'd like to discuss business and rental properties. Ms. Nixon says I'm not available Sunday. How about Monday? She does not reject meeting with him in person. She proposes Monday. Mr. Casella then goes on to say I have a trade show Monday and then they ultimately agree to a phone conversation. So there's not a rejection of getting together. There's nothing overtly sexual that can be inferred from those emails. So to suggest that there are questions of fact here about what the emails meant or the timing, that's not supported by the undisputed facts in this case. I would point out that opposing counsel has cited no cases, and I'm not aware of any, where the cessation of a consensual relationship alone is determined to be an unwelcome advance in and of itself. In all the cases that are cited involving consensual relationships, there are further unwanted advancements. The supervisor threatens the job. The supervisor attempts to rekindle the relationship, makes uncomfortable comments directed towards the employee. We do not have any of that in this case. So I think the court would be making new law if the mere ending of a relationship was sufficient to constitute an unwelcome sexual advance. I would also note that the rule, the proposed change of the law that's being proposed by opposing counsel, which is, and I'm quoting from page 35 of their brief, that in an on and off relationship, the relevant analysis for a quid pro quo claim should not be whether a discreet statement or event was a sexual advance. Instead, courts should determine whether employment actions are because of sex, which can mean a singular advance, or because of other facets of a sexual relationship. Again, that's inconsistent with the law universally on the elements of a quid pro quo claim. Again, I go back to what the gravamen of a sexual harassment claim is. There must be an unwanted advance. This proposal would remove that requirement and ask the court to parse consensual relationships among individuals, the ins and outs of them, and feel around without any guidance as to what might supplant an unwanted advance. And that's not a workable rule. And under this construct, any time an employer would be prohibited from taking an employment action against someone with whom there was a prior relationship, because it would automatically be because of sex. And that's not the law. That's not the framework that's been set forth by the Supreme Court. And it shouldn't be applied here. I would like to turn to the breach of contract claim, unless there are further questions on the quid pro quo matter. The breach of contract claim, the court properly granted summary judgment that there was no contract. Ms. Nixon's employment agreement allowed four circumstances under which she could be terminated. And this was a contract she bargained for that she negotiated. One of those circumstances was unsatisfactory performance. And the record here is undisputed that Ms. Nixon's employment performance was unsatisfactory. She was in the bottom tier of sales representatives repeatedly. She met her sales quota once over the course of five years. It was clear when she returned to employment at the company that she was not putting any effort into her sales work. And for that reason, Mr. Casella had discretion to fire her. He gave the proper written notice. It was 30 days written notice as required under the contract. And he complied with the letter of the contract in carrying out that termination. Is there something inconsistent with you saying that under the termination resulted from the hurt feelings or whatever of the end of the relationship and on the breach of contract claim saying it was terminated because of performance? There's not an inconsistency. You have a situation where a couple that's been working together, that relationship ends, born out of animosity or hurt feelings. He's no longer able to look past her unacceptable performance. He's been trying to give her a chance. He's indicated that he cared for her. He wanted her to be successful. But in light of their separation, her performance could no longer be overlooked. He could not justify keeping on an employee performing at that low level. That's not an inconsistent position at all. He was permitted under the contract to do so. Whether or not she was a man, a woman, they were having a relationship or not, the contract gave him the right to let an underperformer go and he did that. I will use my remaining moments simply to point out that there were no unwanted sexual advances in this case. The courts identified questions and ultimately whether or not there's an unwanted advance is dictated by the plaintiff's perspective and understanding. Ms. Nixon's understanding was that they were in a relationship because she did not decide to end it until he was in Europe. This is supported by the record. Their relationship leading up to the trip to Europe. They're together. I'll come back to Mr. Casella's testimony. He said, in early September, who ended it? His quote, we both did. That was the pattern in their relationship for five years. They would end it, they would get back together. Mr. Casella recalling something that happened... For summary judgment, you've got to get to an undisputed fact. Well, it's undisputed that Ms. Nixon, the plaintiff, the one whose perspective dictates the unwelcomeness, that she believed it was on. There's some evidence of that, but now you have Casella, the defendant, testifying, no, she did know it. Well, Mr. Casella, I disagree that there's a fact dispute here. I disagree to that because the record reflects the parties, on and off, over the course of many years, coming to a separation, reuniting, always under voluntary circumstances, always under mutual circumstances. Here, the fact that Mr. Casella was unable to recall the date of their separation, that's clear from the record. He didn't recall when it was. There's nothing to suggest that there was any unwanted advance, even if that were true. Even if it were true that they had separated earlier, saying, can we get together after I return from my business trip to discuss business? That's not a sexual advance. It's simply not. The West case that we cite talks about phone calls made to a former lover, and the court said, a phone call where we're supposed to presume what the content of that call would be, that's not sufficient to survive summary judgment to demonstrate a sexual advance. And we would argue that that same analysis applies here. I'm happy to address other further questions the court may have. Thank you very much. Mr. Cook, you've got some rebuttal time. Thank you. Two points I'd like to make, Your Honors. First, on the breach of contract action. See, this is factually very important. The district court said that it was, quote, extremely skeptical, unquote, that the ending of the sexual relationship was not the reason, in whole or in part, for the end of the employment relationship. Well, that means a reasonable jury could find that the end of the sexual relationship was, in whole, the only reason for ending the employment relationship. If that's the case, and the judge said it was, then you can't have a performance reason because 100% was based on the end of the sexual relationship. And what the district court said, and at page 1230, is it says, well, if there's a personal reason for the termination, quote, that does not automatically foreclose the possibility of a performance reason. This is summary judgment. And the district court said that there's a possibility that the defendant could be correct on a factual issue, and therefore it gave the defendant summary judgment. That's backwards. That's wrong. If the district court found that the end of the sexual relationship was probably the cause of the end of the job relationship, then, at most, the jury would have to find that the contract specifications were met, and they were not. The second point I want to make, and I'll come back to Judge Quaterbaum and the points that you made earlier about that second prong in the quid pro quo, which is actually the second prong is that there be unwanted sexual harassment as opposed to sexual advances. And if you look at Williams v. Herron, which is the Eighth Circuit case, and Pergine, which is the Eastern District of Pennsylvania case, both of those cases talk about the situation where a plaintiff's trying to get out of a sexual relationship. Kind of similar to here. Back and forth, wants to get out, says some stuff, gets pulled back in. And those courts say, there are facts involved here that that could be sexual harassment when somebody feels they can't get out of, they're trying to get out of a sexual relationship, and they can't. One argument you have is that there's some factual issues about whether there was an unwanted sexual advancement. I understand those. They're either undisputed or they're not. But that's a separate issue. The cases you're talking about and the element you're talking about seems to say that before you get to causation, you have to have an unwelcome sexual harassment. And that seems to suggest that however bad an idea it is for people in the work relationship to be involved romantically, if it's not unwelcome, it's not part of a quid pro quo. And so that seems like it's been the law for not just going back years and years, but pretty recently, unless Bostock changes it. Except, I would suggest, as Pergeen and Williams say, when you have those facts where she's trying to get out of the relationship, then you do have an unwelcome sexual harassment going on. She's trying to get out. So I agree. You're absolutely right. There's two arguments. That's one. That's prong two. Williams and Pergeen get us there. Prong three is the language about the factual dispute, which is there, about whether there was a sexual advance. Thank you very much. We appreciate the argument of both counsel. We'll come down and greet counsel and take a short recess. This honorable court will take a brief recess.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., DeAndrea Gist Benjamin